UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOE MARCONI, ADLINA MARCONI, RICHARD A. BENSON, LOUIS M. BENSON, DANIEL J. SOLIZ, MARGRET M. SOLIZ, MARY POPIEL, JOHN WULFF, and EMIL GOELLNER, individually and on behalf of others similarly situated, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 14 C 7291 |
| INDIANA MUNICIPAL POWER AGENCY, ISC, INC., RAJESHWAR G. RAO, SARGENT & LUNDY, LLC and SKELLY AND LOY, INC., | ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In 2006, the City of Batavia entered into an agreement (the "Power Sales Agreement") with the Northern Illinois Municipal Power Agency ("NIMPA"), a joint municipal power agency of which Batavia is a member, to purchase electricity generated by a facility in southern Illinois called the Prairie State Energy Campus ("PSEC"). Plaintiffs are electricity ratepayers from Batavia. They allege that when Batavia agreed to purchase PSEC power, the City relied on misrepresentations Defendants made, while the PSEC project was being developed, about the quality and cost of the energy the PSEC would generate. As a result, Plaintiffs say, they now pay too much for electricity. Defendants are the Indiana Municipal Power Agency ("IMPA"), an Indiana power agency and partial owner of PSEC that advised Batavia in its selection of a power supplier; ISC, Inc. ("ISC"), a subsidiary of IMPA that provided consulting services to Batavia as it searched for a power supplier; Rajeshwar G. Rao, President and CEO of IMPA and ISC; Skelly and Loy, Inc. ("Skelly and Loy"), an engineering and consulting firm that conducted a technical due diligence study of the PSEC coal mine for IMPA; and Sargent &

Lundy, L.L.C., an engineering and consulting firm that conducted a technical due diligence study of the PSEC power plant for IMPA and other specified third parties.

Plaintiffs brought this suit in Illinois state court, but Defendants IMPA and Rao removed the case to this court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). In August 2015, this court denied Plaintiffs' motion to remand, concluding that none of CAFA's exceptions to federal jurisdiction apply here. In particular, the court rejected Plaintiffs' argument that Sargent & Lundy was a "significant defendant" under CAFA's "local controversy" exception because Plaintiffs had failed to state any claim against Sargent & Lundy and because Sargent & Lundy's conduct in the scheme Plaintiffs alleged was insignificant in comparison to that of other Defendants. The court also granted all Defendants' motions to dismiss for failure to state a claim for negligent misrepresentation, in large part because Plaintiffs had failed to allege that any of the Defendants owed a duty to Plaintiffs themselves, as opposed to the City of Batavia. The court granted Plaintiffs leave to amend their complaint, which they did in October 2015. Among other amendments, Plaintiffs have added allegations about a presentation Sargent & Lundy made to the City of Batavia's Public Utilities Commission in December 2004, about which Plaintiffs insist they only recently learned, as well as allegations that, had Defendants accurately represented the nature of the PSEC project, Plaintiffs could have petitioned for a ballot initiative to vote to express their disapproval of the City's agreement to purchase power from PSEC. Plaintiffs contend that these and other new allegations demonstrate that Sargent & Lundy qualifies as a "significant defendant" under the "local controversy" exception to CAFA jurisdiction, and they ask the court to reconsider its decision denying their motion to remand in light of these new facts. Defendants insist that it would be procedurally inappropriate for the court to reconsider its decision. If the court does entertain Plaintiffs' motion, Defendants urge, the court should conclude that the new allegations make no difference to the outcome. In addition, Defendants have each moved to dismiss Plaintiffs' second amended complaint, arguing that Plaintiffs have again failed to state a claim against

2

them. For the reasons stated below, the court denies Plaintiffs' motion to reconsider [83] its denial of their motion to remand and grants Defendants' motions to dismiss [88, 91, 94].

## DISCUSSION

**I.  Plaintiffs' Motion to Reconsider Order Denying Motion to Remand**

In denying Plaintiffs' motion to remand, the court provided two alternative grounds for its conclusion that Sargent & Lundy, the lone Illinois Defendant in the case, is not a "significant defendant" under the "local controversy" exception to CAFA jurisdiction. *See Marconi v. Indiana Mun. Power Agency*, No. 14 C 7291, 2015 WL 4778528, at *5–*7 (N.D. Ill. Aug. 13, 2015).[1] Under that exception, a district court must decline to exercise jurisdiction if, among other requirements, at least one defendant is a citizen of the state in which the plaintiffs file suit and its "alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. § 1442(d)(4)(A)(II)(bb). The court concluded that though Sargent & Lundy was a citizen of Illinois, where Plaintiffs filed suit, Plaintiffs failed to allege conduct that would support their claim against Sargent & Lundy under Illinois law. *See Marconi*, 2015 WL 4778528, at *5. Thus, Sargent & Lundy's "alleged conduct" could not form any basis, let alone a "significant basis," for Plaintiffs' claims. *Id.*

The court concluded, further, that Plaintiffs' allegations were inadequate to state claims for negligent misrepresentation against any of the Defendants, in part because Plaintiffs did not allege the existence of any relationship between Plaintiffs and Defendants that would give rise to a duty to convey accurate information. *See id.* at *9–*11. Plaintiffs failed to allege, for example, that it was foreseeable to Defendants that Batavia's ratepayers would rely on any of Defendants' statements or that any of Batavia's ratepayers actually received any communication from Defendants or took any action in reliance upon such communication. The court noted that the alleged relationship between Plaintiffs and Sargent & Lundy was "particularly attenuated,"

---

[1]  Throughout this opinion, the court assumes familiarity with its description of the case's facts as set out in its August 13, 2015 opinion. *See generally Marconi*, 2015 WL 4778528, at *1–*4.

3

and thus Sargent & Lundy in particular could not be considered a "significant defendant" under CAFA's local controversy exception. *Id.* at *6. Plaintiffs' allegations against Sargent & Lundy were, thus, even less compelling than the allegations against IMPA, Rao, and ISC. In contrast, those Defendants, for example, are alleged to have made direct representations to the City of Batavia (if not to individual ratepayers). But Sargent & Lundy's and Skelly and Loy's due diligence reports, which contained their alleged misrepresentations, were prepared specifically for IMPA or other specified third parties—not for Plaintiffs or even for the City itself. Thus, if Plaintiffs failed to allege the kind of relationship giving rise to a duty between themselves and IMPA, Rao, and ISC, as the court concluded, the relationship between Plaintiffs and Sargent & Lundy was yet another step removed.

In the alternative to its conclusion that Sargent & Lundy could not be a significant defendant because Plaintiffs failed to state a claim against it, the court determined that Sargent & Lundy did not qualify as a "significant defendant" because its alleged conduct was not significant in comparison to the alleged conduct of the other defendants. As explained above, , Sargent & Lundy's relationship with Plaintiffs was "particularly attenuated," and Plaintiffs' complaint devoted considerably more space to allegations concerning the conduct of IMPA, ISC, and Rao than it did to discussing Sargent & Lundy or Skelly and Loy. *See id.* Thus Sargent & Lundy's alleged conduct did not form a "significant basis" for Plaintiffs' claims under the "comparison approach," which most other courts have adopted, providing the court with an alternative ground to conclude that the "local controversy" exception did not apply. *Id.*

In their second amended complaint, Plaintiffs have included new allegations concerning Sargent & Lundy's conduct (*see, e.g.*, Pls.' Second Am. Class Action Compl. [78], hereinafter "SAC," ¶¶ 68–74, 82–86), and they urge the court to reconsider its denial of their motion to remand in light of these new allegations. Specifically, Plaintiffs now allege that in addition to preparing a due diligence report about the Prairie State Energy Campus for IMPA, Sargent & Lundy attended a meeting held by the City of Batavia Public Utilities Committee on December

4

16, 2004 and made a presentation about its evaluation of the PSEC project. (*Id.* ¶¶ 68–69.) In its presentation, Sargent & Lundy allegedly stated that the design of the PSEC plant at that time was "acceptable without coal washing" and failed to include in its detailed tabulation of the project's risks any discussion of the financial or operational risks associated with the use of "unconditioned coal" at the plant. (*Id.* ¶¶ 70–74.) According to Plaintiffs, the poor quality of the plant's unwashed coal has led to shutdowns and reduced operational capacity, and "it was known at [the time of Sargent & Lundy's presentation]" that use of the unwashed coal would have these effects. (*Id.* ¶¶ 82–83.) Plaintiffs also allege that Sargent & Lundy's presentation was made at a time when Batavia's investment in the project was minimal. Subsequent to Sargent & Lundy's presentation, Batavia made greater financial commitments to the project's development, Plaintiffs allege. (*See id.* ¶¶ 64, 88, 92.) Thus, Plaintiffs assert, these new allegations show that Sargent & Lundy made misrepresentations about the PSEC project's most critical flaw at the critical time period and therefore must be considered a "significant defendant."

Plaintiffs' account of Sargent & Lundy's 2004 presentation, however, appears to be misleading. They do not attach the presentation slides to their complaint, but Sargent & Lundy has attached them to its motion to dismiss, and because the Plaintiffs have referred to this presentation in their complaint, the court may properly consider them. *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). A review of those slides reveals that Sargent & Lundy did not take such a strong stance in favor of unwashed coal, the project's purported "critical flaw." To the contrary, Sargent & Lundy listed costs and benefits of coal washing and stated that a "[d]etailed review of coal is required to determine if washing is beneficial," that the "[e]conomics of coal washing requires a station specific review for the coal used," that "[d]etailed system by system reviews generally show that coal washing is economical for high ash coals," and that Peabody was "currently considered coal washing." Sargent & Lundy's Prairie State Project Review Presentation, Ex. B to Def. Sargent & Lundy's Mem. in Supp. of Mot. to Dismiss [89-2], at 30–32.

5

In their motion to reconsider the court's order denying remand, Plaintiffs challenge both grounds underlying the court's conclusion that Sargent & Lundy was not a "significant defendant." They first argue that the court erred when it considered the arguments from Defendants' motions to dismiss on the merits of Plaintiffs' claims in ruling on their motion to remand. They contend that in doing so, the court improperly "assumed jurisdiction" before deciding the merits. (Pls.' Mot. for Reconsideration [83] 4–7.) As explained in the earlier opinion, in the context of in deciding whether they have subject matter jurisdiction. *Marconi*, 2015 WL 4778528, at *6. Plaintiffs point out, however, that courts will only dismiss a defendant as fraudulently joined if they determine that the claims against that defendant are "utterly groundless," and that this court made no such determination about Plaintiffs' claim against Sargent & Lundy. In their reply, Plaintiffs also argue that even if it were proper for the court to consider the merits of their claim at this stage, the allegations included in their amended complaint are now sufficient to state a claim against Sargent & Lundy. Regarding the court's conclusion that Sargent & Lundy's conduct did not form a significant basis for Plaintiff's claims in comparison with the other Defendants, Plaintiffs contend that the "comparison approach" was not the correct test to apply, and that even if it were, the new allegations in the amended complaint demonstrate that Sargent & Lundy's conduct did in fact form a significant basis for Plaintiffs' claims.

In response, Defendants offer both procedural and substantive reasons why the court should deny Plaintiffs' motion to reconsider. On procedural grounds, Defendants argue (1) that reconsideration is proper only under rare circumstances and that rather than showing that such circumstances are present in this case, Plaintiffs merely rehash arguments the court has already rejected; and (2) that Plaintiffs' arguments in favor of remand impermissibly rely on allegations that were added to their complaint only after the case had been removed. Even if the court were to ignore these procedural obstacles to reconsideration and consider Plaintiffs' new allegations, Defendants urge, the new allegations provide no reason for the court to reach

a different conclusion on the merits. That is, according to Defendants, Sargent & Lundy is still not a "significant defendant" under CAFA's local controversy exception either because Plaintiffs have still failed to state a claim against Sargent & Lundy or because Sargent & Lundy's alleged conduct is still insignificant in comparison to the alleged conduct of the other Defendants. The court considers these arguments in turn.

### A. Defendants' Procedural Objections to Reconsideration

Defendants' procedural arguments against the motion to reconsider have considerable merit. A significant portion of Plaintiffs' motion for reconsideration *is* devoted to rehashing arguments the court has already considered and rejected. Litigants may seek appellate review if they disagree with a district court's reasoning, "but a motion to reconsider is not the appropriate mechanism for a party to relitigate already-rejected arguments." *Henson v. T-Mobile USA*, No. 12 C 3845, 2013 WL 4725549, at *2 (N.D. Ill. Sept. 3, 2013). Where Plaintiffs have raised new arguments, they rely on allegations that were not included in their complaint at the time of removal, and it is not clear that the court is permitted to consider such post-removal allegations in determining whether it has subject-matter jurisdiction. "The well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction." *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010) (applying the general rule in case where plaintiffs attempted to evade CAFA jurisdiction by removing class allegations from original complaint).

Plaintiffs offer two challenges to application of the *Burlington* rule here, but neither is persuasive. First, Plaintiffs argue that applying the general rule laid out in *Burlington* to the present case would contradict the federal removal statute, which requires a case to be remanded if it appears that the district court lacks subject matter jurisdiction "[a]t any time before final judgment . . . ." 28 U.S.C. § 1447(d). The Seventh Circuit, however, has already considered and rejected this precise argument. *See Matter of Shell Oil Co.*, 966 F.2d 1130, 1133 (7th Cir. 1992) ("Does the reference to 'any time before final judgment' [in § 1447(d)] mean

7

that changes after removal can eliminate jurisdiction and require remand? We think not."). Second, Plaintiffs argue that applying the rule from *Burlington* would be inconsistent with the Seventh Circuit's observation that a motion to reconsider can perform a valuable function if there has been "a controlling or significant change in the law or facts since submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). But even if Plaintiffs' purportedly recent discovery of Sargent & Lundy's 2004 presentation constitute a "significant change in facts"—a questionable proposition—Plaintiffs have not explained why a statement about the value of considering new facts generally should trump a rule prohibiting the consideration of amended pleadings in the specific context of removal, a context which presents unique "concerns about forum manipulation." *Burlington*, 606 F.3d at 381.

*Burlington* thus places Plaintiffs' reconsideration on shaky procedural ground. The court does recognize, however, that though the post-removal amendments at issue in *Burlington* were made in the context of CAFA jurisdiction, the plaintiffs' conduct in *Burlington* provided a clearer example of potential forum manipulation than what Plaintiffs have attempted in this case. The stripping of all class allegations from their original complaint in *Burlington* was a rather conspicuous attempt to evade CAFA jurisdiction. Indeed, when the Ninth Circuit confronted a situation more akin to the one presently before the court, it concluded that the general rule prohibiting consideration of post-removal filings did not apply where the plaintiffs had amended their complaint to address the applicability of CAFA's local controversy exception. *See Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015). This court is of course not bound by the rulings of the Ninth Circuit, and the dissent in *Benko* raises legitimate concerns about providing plaintiffs with tools to frustrate congressional content by pleading around CAFA jurisdiction. *See id.* at 1123 (Wallace, J., dissenting). For the sake of argument, however, the court will treat this case as an exception to the general rule and will consider Plaintiff's post-removal allegations, recognizing that the new allegations concern events that occurred prior to

removal but about which Plaintiffs aver they were unaware through no fault of their own.

### B. Plaintiffs' Substantive Case for Reconsideration

Plaintiffs' new allegations, however, do not change the court's conclusion that Sargent & Lundy is not a significant defendant under CAFA's local controversy exception. Plaintiffs now allege that Sargent & Lundy actually made representations about the PSEC project directly to the City of Batavia during its presentation in December 2004. (SAC ¶¶ 68–73.) As a result, Plaintiffs' relationship to Sargent & Lundy is arguably less attenuated than as previously described. But it is still no less attenuated than the relationship between Plaintiffs and IMPA, ISC, and Rao, which the court has already determined is not the type of relationship that gives rise to a duty owed by any of those Defendants to Plaintiffs, and as discussed more fully below, Plaintiffs have not stated claims against those other Defendants, either. In addition, Plaintiffs do not allege that they themselves actually viewed or received the presentation or took any action in reliance upon it. Indeed, they could not make such an allegation because, in arguing that they could not have discovered the presentation earlier, Plaintiffs admit that they "only recently became aware of the December 16, 2004 presentation by Sargent & Lundy." (Pls.' Reply in Supp. of Mot. for Reconsideration [104] 4.) Thus despite the new allegations, Plaintiffs have still not shown that Sargent & Lundy's alleged conduct could form the basis for a negligent misrepresentation claim, and for that reason, Sargent & Lundy's alleged conduct could not be a "significant basis" for their claims under the local controversy exception.

In addition, even though the allegations in Plaintiffs' amended complaint cast Sargent & Lundy as playing a more significant role than the one it played in the original complaint, Sargent & Lundy's alleged conduct still appears insignificant when compared to that of Defendants IMPA, ISC, and Rao. According to the amended complaint, those three Defendants specifically agreed to market the PSEC project to municipal power agencies. (SAC ¶ 43.) Each of those three was also hired to advise NIMPA or Batavia itself in the selection of a power provider. (*See id.* ¶¶ 2, 3, 49.) And each of the three defendants allegedly made representations concerning

the PSEC project on a number of occasions over a time period spanning from at least September 2004 until April 2007. (*See, e.g.*, *id.* ¶¶ 53, 58, 124, 141, 162, 193.) The second amended complaint contains no allegations, on the other hand, that Sargent & Lundy had any financial interest in PSEC; that it had any contractual relationship with NIMPA or Batavia; or that it made continued misrepresentations over a period of time to mislead Batavia in its search for a power provider. Rather, Sargent & Lundy's only alleged misrepresentations were contained in its December 2004 presentation to Batavia's Public Utilities Committee and its January 2005 due diligence report prepared for IMPA. One illustration of the difference between Sargent & Lundy's conduct and that of IMPA, ISC, and Rao can be found in the section of the amended complaint detailing the counts against them. The negligent misrepresentation counts asserted against IMPA, ISC, and Rao all rest on the same eight alleged instances of negligent conduct. (*See id.* ¶¶ 274, 286, 298.) The count asserted against Sargent & Lundy, in contrast, lists only four instances in common with IMPA, ISC, and Rao. A fair reading of the amended complaint leads to the conclusion that there were three primary players in the alleged attempt to mislead Batavia into investing in the PSEC project: IMPA, its subsidiary ISC, and its CEO and President Rao. Compared to those three Defendants, Sargent & Lundy, a consultant hired by IMPA, still looks to be a merely "peripheral or ancillary" actor. *Marconi*, 2015 WL 4778528, at *6. Sargent & Lundy's alleged conduct, therefore, does not form a "significant basis" of Plaintiffs' claims, and the court stands by its conclusion that the local controversy exception does not apply to this case.

Plaintiffs also argue that instead of adopting the comparison approach, the court should adhere to the approach outlined in *Anderson v. Hackett*, 646 F. Supp. 2d 1041 (S.D. Ill. 2009), under which they claim that a defendant is considered significant if "the allegations against it form the basis for a right to relief for most or all of the members of the proposed class." *Id.* at 1048. Under that test, Plaintiffs argue, Sargent & Lundy is a significant defendant because a successful negligent misrepresentation claim against Sargent & Lundy would provide a right to

relief for all the members of the Plaintiff class. The court addressed this argument directly in its prior order and sees no reason to reach a different conclusion now. As discussed above, the court does not believe the allegations against Sargent & Lundy "form the basis for a right to relief" for *any*, let alone "most or all," of the members of the proposed class. Thus "Sargent & Lundy is not a significant defendant even under *Anderson*." *Marconi*, 2015 WL 4778528, at *7. The Senate Committee Report discussed by the court in *Anderson* helpfully illustrates why the local controversy exception does not apply to Sargent & Lundy. The court in *Anderson* discussed the Report's example of a class action complaint against an insurance agent and his insurer employer, alleging a schemed implemented by the employer in which the insurance agent participated. *Anderson*, 646 F. Supp. 2d at 1049. In such a case, if only a small number of the plaintiff class members had any contact with the agent, his conduct could not be a significant basis for the class claim, and the class as a whole could not seek relief from him. *See id.* The agent, therefore, would not be a significant defendant. *Id.* In this case, however, *no* class members are alleged to have had contact with Sargent & Lundy and thus no members—let alone the class as a whole—could seek relief from the company according to the reasoning of the *Anderson* court and the Senate Report it cites. This court's conclusion that the local controversy exception to CAFA is inapplicable in this case thus remains unchanged.

II. **Defendants' Motions to Dismiss**

In their second amended complaint, Plaintiffs again assert claims for negligent misrepresentation under Illinois law against each Defendant. To state such a claim, plaintiffs must allege:

> (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damages to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information.

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326 334–35, 843 N.E.2d 327,

332 (2006). As discussed above, the court previously dismissed Plaintiffs' claims for negligent misrepresentation against all Defendants, in large part because Plaintiffs failed to allege facts showing that Defendants had the type of relationship with Plaintiffs such that they would owe Plaintiffs a duty. *See Marconi*, 2015 WL 4778528, at *10. The court identified other defects in Plaintiffs' complaint as well, including Plaintiffs' failure to allege that Defendants intended to induce Plaintiffs to take action in reliance on their misrepresentations or that Plaintiffs actually took any such action in reliance. *See id.* at *11. In reaching its conclusion, the court noted that Plaintiffs' allegation that they were unable to opt out of receiving electricity from the City actually undermined Plaintiffs' ability to allege that they took any action in reliance upon Defendants' alleged misrepresentations because there was apparently no such action they could have taken. *See id.* In addition to those identified defects, the court also highlighted a concern with the content of the misrepresentations Plaintiffs had alleged, namely that none of the misrepresentations appeared to be actionable under Illinois negligent misrepresentation law as false statements of "material fact." *See id.* at 12.

Plaintiffs have attempted to cure these identified defects in their second amended complaint. The court has already discussed Plaintiffs' inclusion of allegations regarding a presentation Sargent & Lundy gave to the Batavia Public Utilities Committee in December 2004. In addition to these new allegations, Plaintiffs also now allege that Batavia's obligations to make utility payments are not a "general obligation of the City," but rather a "limited obligation of the City payable from and secured by a pledge of, and lien and charge upon the revenues of the City's electric system . . . ." (SAC ¶ 112.) According to Plaintiffs, Defendants were "fully aware of the dependence on Batavia's ratepayers to bear the costs associated with the PSEC project." (*Id.* ¶ 118.) In addition, Plaintiffs have attempted to clarify the options that would have been available to Batavia's ratepayers had they obtained accurate information about the cost and quality of PSEC power. Plaintiffs have removed the allegation that Batavia's ratepayers are unable to go elsewhere to purchase electricity, and they have added allegations concerning an

12

avenue by which Batavia's ratepayers could object to the City's agreement to purchase power if they disapproved of it. Specifically, Plaintiffs allege that Batavia's ratepayers could have petitioned for the inclusion of an advisory public question, concerning the Batavia City Council's approval of (or final commitment to) the Power Sales Agreement, on the ballot for either the November 7, 2006 state general election or the April 17, 2007 Kane County consolidated election. (*Id.* ¶¶ 120, 187.) They assert that pursuant to Section 28-6 of the Illinois Election Code, if the petition were signed by "at least 8% of the total votes cast for candidates for Governor in the preceding Gubernatorial election by the registered voters of Batavia," the advisory question would have to be submitted to those voters (the Plaintiffs here) for a vote. (*Id.* ¶¶ 121, 188.)

In deciding whether to grant a motion to dismiss for failure to state a claim, a court construes the complaint in the light most favorable to the plaintiffs, accepting all well-pleaded facts as true, and drawing all reasonable inferences in the plaintiffs' favor. *See Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir., 2016). To avoid dismissal, the plaintiffs must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). The court need not, however, accept as true "any legal assertions or recital of the elements of a cause of action supported by mere conclusory statements." *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014) (quotation marks and citation omitted).

Plaintiffs contend that the allegations in their second amended complaint either establish or allow reasonable inferences in support of each element for a negligent misrepresentation claim against each Defendant. Plaintiffs emphasize, for example, their allegations that Batavia's obligation to make payments under the Power Sales Agreement was not a "general obligation of the City" and that as consultants for NIMPA and the City of Batavia, Defendants were aware that NIMPA and Batavia depended on Batavia's ratepayers to make their payments. (*See* SAC ¶¶ 112–18.) They also emphasize that Batavia's ratepayers could have petitioned for a public

13

advisory question regarding the Power Sales Agreement to be included on the ballot in either the state or county elections. (*See* SAC ¶¶ 119–121, 186–88.) From these allegations, Plaintiffs urge the court to infer (1) that Defendants could foresee, and actually intended, that the information they provided to the Batavia City Council concerning the PSEC would become known to Batavia's ratepayers, (2) that Defendants knew that ratepayers had the ability to petition the Batavia City Council for approval or disapproval of the Power Sales Agreement, (3) that Batavia's ratepayers actually did have knowledge of Defendants' misrepresentations and relied on them in deciding not to petition the Batavia City Council concerning the Power Sales Agreement, and (4) that if Batavia's ratepayers had received accurate information regarding the PSEC, they would have petitioned the Batavia City Council to express their disapproval of the Power Sales Agreement.

Despite Plaintiffs' efforts to cure the defects the court previously identified, the complaint's allegations still do not plausibly support the inferences Plaintiffs ask the court to draw. For example, Plaintiffs have not alleged that they actually did receive any of Defendants' alleged misrepresentations; they nevertheless ask the court to *infer* that they did merely because it was no secret that ratepayers would bear the costs for the PSEC project under the Power Sales Agreement. But however desirable it might be for this information to be made public, it does not follow that members of the Batavia City Council would have passed along information about the PSEC to Batavia's ratepayers simply because those ratepayers would ultimately pay the freight. No allegation in Plaintiffs' complaint provides support for such an inference, and it would be unreasonable to infer that citizens have the same knowledge as their elected representatives about every decision for which they will be expected to bear the costs. It also does not follow from the allegations in Plaintiffs' complaint that Defendants intended, or could foresee, that their representations to the Batavia City Council would reach Batavia's ratepayers. But the greatest inferential leap Plaintiffs urge the court to make is the conclusion that Defendants intended their misrepresentations to reach Batavia's ratepayers to induce them

14

to refrain from petitioning for an advisory question to be placed on an electoral ballot. Defendant Skelly and Loy describes the chain of assumptions that would be required to make such an inference:

> In other words, Skelly and Loy, a corporation located in Pennsylvania, would expect that a report expressly prepared for the Indiana Municipal Power Authority would influence Illinois residents in their decision to exercise their right under Illinois law to obtain signatures from 10% of registered voters[2] and have a question placed on a ballot which, if approved by voters, would offer their non-binding opinion[3] on whether their municipality should commit to the PSEC Project.

(Def. Skelly and Loy's Reply in Supp. of Mot. to Dismiss [109] 3.) The court need not accept such "unreasonable inferences or unwarranted deductions of fact." *Naperville Smart Meter Awareness v. City of Naperville*, No. 11 C 9299, 2013 WL 1196580, at *10 (N.D. Ill. Mar. 22, 2013). This long chain of assumptions is simply not supported by the allegations in the complaint. The chain of assumptions is similarly long for the other Defendants, and inferences about their intentions to induce Plaintiffs to act are also unwarranted.

In addition to urging the court to make such strained inferences, Plaintiffs renew their argument, which the court has already rejected, that "as their elected city officials, any foreseeable, intended, and actual reliance of the Batavia City Council on Defendants' misrepresentation is the foreseeable intended, and actual reliance of Batavia's ratepayers." (*See, e.g.*, Pls.' Resp. to IMPA, ISC, and Rao's Mot. to Dismiss [105] 4.) Plaintiffs offer no legal support for that proposition, and the court has not yet found any authority that would authorize a municipality's citizens or ratepayers to sue in tort on behalf of their municipality because the municipality was defrauded or misled by a third party. *See Marconi*, 2015 WL 4778528, at *10. In fact, the law in Illinois appears to be to the contrary. *See Cty. of Cook ex rel. Rifkin v. Bear*

---

[2] The Illinois statute actually provides that "8% of the total votes cast for candidates for Governor in the preceding gubernatorial election by the registered voters" sign the petition. 10 ILCS 5/28-6(a).

[3] The adoption or rejection of propositions included in such advisory questions shall result in "no legal effects." 10 ILCS 5/28-6(c).

15

*Stearns & Co.*, 215 Ill. 2d 466, 479–81, 831 N.E.2d 563, 571–72 (2005) (rejecting argument that government body's taxpayers have common law standing to sue private, third-party wrongdoers based on the taxpayers' increased burden of taxation resulting from the misapplication of public funds).

Finally, Plaintiffs' claims fail because they have not alleged that Defendants made any specific false statements of material fact. "[T]he basis of a negligent misrepresentation claim must be a statement of fact; expressions of opinion are not actionable." *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 17, 653 N.E.2d 968, 973 (2d Dist. 1995). Projections or predictions or "assurances as to future events are generally not considered misrepresentations of fact." *Power v. Smith,* 337 Ill. App. 3d 827, 832, 786 N.E.2d 1113, 1118 (4th Dist. 2003). Almost all of the "misrepresentations" Plaintiffs allege appear to fall into the categories of expression of opinion or future projection, which are not actionable—for example, opinions and projections about the economic viability and operational capacity of the PSEC project, the costs associated with the project, the future impact of certain changes to the project, the likelihood that PSEC's owner would maintain its ownership interest, the necessity of Batavia City Council's approving its commitment to the project, or how long the supply of coal in the adjacent mine would last. (*See* ¶¶ 274, 286, 298, 308, 320.) One alleged misrepresentation that might appear to constitute a false statement of material fact is Skelly and Loy's allegedly false statement that the ash content of the coal at the mine adjacent to the PSEC was, on average, 22.2%. But a review of Skelly and Loy's report reveals that Skelly and Loy were merely reporting the ash content that had been provided to it, not an amount that it had independently observed, and the report specifically went on to recommend that "further investigations be performed to assess the effects that out-of-seam dilution and sequence of mining may have on final coal quality parameters." Skelly and Loy Fatal Flaw Analysis, Ex. B. to Pls.' Resp. to Skelly and Loy's Mot. to Dismiss [53-2], at 5. Language calling for "further investigation" is the kind of "cautionary language" that "negates the materiality of any alleged misrepresentation." *Lagen*, 274 Ill. App.

16

3d at 11, 653 N.E.2d at 973. Thus to the extent Plaintiffs have alleged any false statements of fact, none are material.

## **CONCLUSION**

For the reasons discussed above, the court denies Plaintiffs' motion to reconsider [83] and grants Defendants' motions to dismiss [88, 91, 94]. Plaintiffs will have leave to file an amended complaint, should they choose to do so, within 14 days.

ENTER:

Dated: August 30, 2016

_____
REBECCA R. PALLMEYER
United States District Judge